IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| COLLIE M. TRANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| (1) STATE OF OKLAHOMA; | ) | |
| (2) BOARD OF MEDICOLEGAL | ) | |
| INVESTIGATIONS; | ) | |
| (3) OFFICE OF THE CHIEF | ) | |
| MEDICAL EXAMINER; | ) | |
| (4) DEWAYNE ANDREWS, in his | ) | Case No. CIV-10-555-C |
| individual and official capacities; | ) | |
| (5) DOUGLAS STEWART, in his | ) | |
| individual and official capacities; | ) | |
| (6) ROCKY MCELVANY, in his | ) | |
| individual and official capacities; | ) | |
| (7) C. MICHAEL OGLE, in his | ) | |
| individual and official capacities; | ) | |
| (8) CHARLES CURTIS, in his | ) | |
| individual and official capacities; | ) | |
| (9) KARLIS SLOKA, in his | ) | |
| individual and official capacities; | ) | |
| (10) CHRIS FERGUSON, in his | ) | |
| individual and official capacities; | ) | |
| (11) SHANDA MCKENNY, in her | ) | |
| individual and official capacities; | ) | |
| (12) CHEROKEE BALLARD, in her | ) | |
| individual and official capacities; | ) | |
| (13) SANDRA BALZER, in her | ) | |
| individual and official capacities; | ) | |
| (14) TOM JORDAN, in his | ) | |
| individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

Plaintiff Collie M. Trant brought the present suit seeking declaratory and monetary relief against fourteen Defendants, including the State of Oklahoma and members of the Board of Medicolegal Investigations ("Board") in their individual and official capacities, under nineteen various causes of actions sounding in federal and state law.  Plaintiff originally filed suit in state court, and thereafter Defendants removed to this Court asserting jurisdiction pursuant to 28 U.S.C. § 1331.

This Court previously partially granted Defendants' First Motions to Dismiss as to Plaintiff's fourteenth, fifteenth, and sixteenth causes of actions, and remanded the remaining state-law actions to state district court.[1]  Plaintiff appealed this Court's Order to the Tenth Circuit, which partially affirmed and reversed and remanded.  Plaintiff concedes that his third, tenth, eleventh, twelfth, thirteenth, fifteenth, sixteenth, and nineteenth causes of action are foreclosed by the Tenth Circuit's ruling.  Accordingly, these claims are dismissed.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must set forth factual allegations sufficient to "raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct.

---

[1]  The underlying facts of this case were outlined in this Court's previous Order governing the Defendants' first round of motions to dismiss.  (Order, Dkt. No. 68, at 2-6.)

1937, 1949 (2009).  A plaintiff need not detail factual allegations in the complaint, but must provide the grounds of entitlement to relief, which entails more than labels and conclusions—"a formulaic recitation of the elements of a cause of action will not do . . . ." Twombly, 550 U.S. at 555.  When considering a motion to dismiss, courts look to the complaint and those documents attached to or referred to in the complaint, accept as true all allegations contained in the complaint, and draw all reasonable inferences from the pleading in favor of the pleader.  Pace v. Swerdlow, 519 F.3d 1067, 1072 (10th Cir. 2008); Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).  A court is not bound to accept as true a plaintiff's legal assertions.  Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949-50.

## III.  DISCUSSION

### A.  State Defendants' Motion to Dismiss

#### 1.  Plaintiff's Standing to Assert His First Claim

Defendants argue that Plaintiff lacks the requisite standing to assert his first claim for declaratory judgment regarding the interrelation of authority between the Board and the Chief Medical Examiner ("CME").[2]  ""The case-or-controversy doctrines state

_____

[2]  Throughout the parties' briefs, reference is made to the Oklahoma Declaratory Relief Statute, under which Plaintiff asserts that he is entitled to declaratory relief regarding his first, second, sixth and eighth causes of action. 12 Okla. Stat. § 1651.  Declaratory relief statutes provide an additional procedural remedy to controversies over which the courts have jurisdiction; declaratory judgment acts do not affect the underlying substantive rights nor do they expand the jurisdiction of courts.  Because these statutes are procedural in nature, the Erie doctrine (see Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)), applies.  Farmers Alliance Mut. Ins. Co. v. Jones, 570 F.2d 1384, 1386 (10th Cir. 1978); Surefoot L.C. v. Sure Foot Corp., No. 2:07-CV-67 TS, 2007 WL 1412931, at *3 (D. Utah May 10, 2007) (finding that the declaratory judgment acts are procedural and therefore that the "Federal Declaratory Judgment Act

fundamental limits on federal judicial power in our system of government. . . .  A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 750-51 (1984). Constitutional standing is a threshold jurisdictional question. Injury, causation, and redressability are constitutional standing requirements that must be satisfied prior to adjudication by Article III courts.

Here, Plaintiff claims that his authority as CME was infringed upon by Defendants' violation of his statutorily enumerated powers.  Plaintiff does not explicitly state in his Amended Complaint what relief he seeks, but in his responsive brief he states that "[t]he First Cause of Action does not seek the reinstatement of Plaintiff. . . . [T]he First Cause of Action would only involve declaring the CME's authority to conduct the administration of his office and injunctive relief precluding any further direct involvement (as opposed to oversight) in the administration of the office."  (Pl.'s Br., Dkt. No. 92, at 12 n. 3.) Plaintiff goes on to state that he

---

effectively govern[ed] [the] action" despite originally being filed under Utah Declaratory Judgment Act).

Therefore, while state law governs the substantive rights and duties of the parties regarding the state law claims, whether Plaintiff can assert a declaratory judgment action in this Court is governed by federal law.  United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966) (state law governs substantive claims founded in state law claims heard by federal courts through supplemental jurisdiction); Manuel v. Convergys Corp., 430 F.3d 1132, 1138 n.3 (11th Cir. 2005).  Accordingly, for present purposes, the Court will construe Plaintiff's assertion for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, not the Oklahoma Declaratory Relief Statute, 12 Okla. Stat. § 1651.  Because Defendants do not assert that this Court should decline to exercise its discretion to hear declaratory actions, the Court will not now address it.

4

> acknowledge[s] that an "existing" controversy as to Plaintiff's authority only exists if he is reinstated pursuant to one of the other causes of action. That is, absent reinstatement, the dispute over Plaintiff's authority [does] not exist[]. Accordingly, the viability of the Declaratory Judgment claim to determine his authority is dependent upon the Court determining [that] Plaintiff should be reinstated and [that] Defendants should be precluded from interfering with his authority.

(Id. at 13-14 n.4.) Beyond being reinstated at some future date and facing further "wrongful interference" by the Board, Plaintiff has not established how "any decision from this court will redress an injury *to him*." United States v. Wilson, 445 F. App'x 141, 144 (10th Cir. 2011); Ward v. Utah, 321 F.3d 1263, 1266 (10th Cir. 2003) ("'Plaintiff[ ] must demonstrate a personal stake in the outcome in order to assure that concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions.'" (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983))). Plaintiff has not established that he has suffered from an actual injury that can be redressed by a favorable judicial decision. Plaintiff's argument that one day he may be reinstated as the CME and again suffer intrusion by the Board is too speculative to satisfy the constitutional standing requirements. "[T]he entry of a declaratory judgment in [Plaintiff's] favor would amount to nothing more than a declaration that he was wronged, and would have no effect on [Defendants'] behavior towards him." Green v. Branson, 108

F.3d 1296, 1300 (10th Cir. 1997) (citations omitted).  Accordingly, Plaintiff's first cause of action is dismissed.[3]

### 2.   Defendants Named in Official Capacities

Initially, Defendants seek dismissal of Plaintiff's first cause of action for naming them in their official capacities, which they claim is prohibited under Oklahoma law. Defendants argue that because the first nine causes of action only seek reinstatement of Plaintiff as CME, Defendants Jordan, Balzer, Ballard, and McKenny should be dismissed as they are not current members of the Board—the only entity with the authority to reinstate Plaintiff as CME.

But only Plaintiff's fourth claim explicitly seeks reinstatement.  (Am. Compl., Dkt. No. 38, at 36 (Plaintiff's fourth cause of action alleges that Defendants "have a non-discretionary duty to return Plaintiff to his position with all the emoluments of his position until a lawful vote is taken to terminate Plaintiff from his position.").)  In his second claim, Plaintiff seeks a declaratory judgment that Defendants willfully violated the Open Meeting Act ("OMA") and, therefore, that actions taken in those violative meetings are void.

---

[3] While Defendants' Motion alleges dismissal is warranted pursuant to Rule 12(b)(6), Article III courts must be satisfied that subject-matter jurisdiction is present and may raise these jurisdictional defects sua sponte. Additionally, because Defendants' argument regarding subject-matter jurisdiction is based on the face of the Amended Complaint, the standard for dismissal under 12(b)(1) is the same as a motion under 12(b)(6).  Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010) (finding "the same standards [applicable] under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action").

Plaintiff's sixth and eighth claims seek declaratory judgment that Defendants violated Plaintiff's rights under the Oklahoma Constitution.

Accordingly, Defendants' argument that Plaintiff's first nine causes of action must be dismissed because Defendants Jordan, Balzer, Ballard, and McKenny are not Board members applies only to Plaintiff's fourth claim and is valid. 63 Okla. Stat. § 934 ("The Board of Medicolegal Investigations shall appoint a Chief Medical Examiner . . . ."). Because only members of the Board have authority over appointment of the CME and the above-referenced Defendants are not Board members, they should be dismissed as to Plaintiff's fourth claim.[4]

Additionally, Defendants argue that Plaintiff's last three causes of action, all asserted under the Governmental Tort Claims Act ("GTCA"), cannot be asserted against state employees in their official capacities. 51 Okla. Stat. § 163(C). Therefore, Defendants assert that all claims against Defendants Balzer, Ballard, Jordan, and McKenney should be dismissed.

Under Oklahoma law, tort claims against governmental officers acting in their official capacities are the same as claims against the entity the officers represent. Pellegrino v. State ex rel. Cameron Univ., 2003 OK 2, ¶ 5, 63 P.3d 535, 537 ("A suit

---

[4] Defendant Balzer is the Board's legal advisor, Defendant Jordan is the Chief Administrative Officer of the Office of the Chief Medical Examiner ("OCME"), Defendant Ballard is the Executive Administrator of the OCME, and Defendant McKenney is no longer a Board member. (Defs.' Br., Dkt. No. 88, at 2.) Additional reasons call for dismissal of Plaintiff's fourth claim. See infra note 10.

against a governmental officer in his or her 'official capacity' is the same as a suit against the entity that the officer represents, and is an attempt to impose liability upon that entity."); Shephard v. CompSource Okla., 2009 OK 25, 209 P.3d 288; Turner v. Bd. of Cnty. Comm'rs of Cnty. of Grady, 1993 OK CIV APP 125, ¶ 10, 858 P.2d 1288, 1289-90 ("The Tort Claims Act is the exclusive remedy against a governmental entity in Oklahoma, and our Supreme Court has determined the Legislature, by the Act, specifically abrogated any previously existing common law or statutory right of recovery for torts coming within the Act.").

After reading Plaintiff's Amended Complaint, he asserts his claims arising under the GTCA only against the State of Oklahoma, not individual Defendants in their official capacities. (See, e.g., Am. Compl., Dkt. No. 38, at 53 ("This cause of action is brought against the State of Oklahoma pursuant to the Governmental Tort Claims Act.").) Additionally, Plaintiff states in his response brief that the declaratory judgment and damage claims "merged" into two claims, which seems to recognize the redundancy of asserting separate causes of action against the Board and Defendants in their official capacities for state constitutional violations.[5] (Pl.'s Br., Dkt. No. 92, at 22.) Accordingly,

---

[5] The language in Plaintiff's brief is somewhat ambiguous. After reading the paragraph in its entirety, however, the Court believes Plaintiff intended the sentence to read in the following manner: "Plaintiff would submit that the Declaratory Judgment and damage claims have no[w] effectively merged into two causes of action seeking recovery for retaliation for free speech and petitioning the government." (Pl.'s Br., Dkt. No. 92, at 22.) This construction is due to the preceding sentences, which refer to the original petition in state court and the subsequently added GTCA claims.

Plaintiff effectively withdraws his sixth and eighth causes of action, which are therefore dismissed.

### 3. Breach of Implied Contract

Plaintiff asserts a claim for breach of implied contract alleging that the Open Meeting Act, 25 Okla. Stat. § 302, gave rise to an implied contract that the Board adhere to the procedures in the OMA.  (Pl.'s Br., Dkt. No. 92, at 17.)  Defendants argue that the OMA does not qualify as a policy or procedure that grants Plaintiff a specific entitlement to that procedure; Defendants distinguish the present case from those on which Plaintiff relies by pointing out that the OMA was enacted for the benefit of the general public, not Plaintiff individually.  (Defs.' Br., Dkt. No. 97, at 6.)

Under Oklahoma law, an implied contract can be formed between employers and at-will employees, which is typically a factual question, unless the alleged promises are nothing more than vague assurances.  See Miner v. Mid-Am. Door Co., 2003 OK CIV APP 32, ¶ 33, 68 P.3d 212, 221 (noting that "implied contractual provisions may restrict an employer's freedom to discharge an employee at will, and that such restrictions may arise from employee manuals, oral assurances, and the like"); Gabler v. Holder & Smith, Inc., 2000 OK CIV APP 107, ¶ 24, 11 P.3d 1269, 1275.  Cf. Bowen v. Income Producing Mgmt. of Okla., Inc., 202 F.3d 1282, 1284-85 (10th Cir. 2000) (finding that "[e]mployer guarantees are merely 'vague assurances' unless they place *substantive restrictions* on the reasons an employer may terminate an employee.").

Pursuant to Oklahoma law, the following factors are weighed in determining whether an at-will employee and employer had an implied contract: "(a) evidence of some 'separate consideration' beyond the employee's services to support the implied term, (b) longevity of employment, (c) employer handbooks and policy manuals, (d) detrimental reliance on oral assurances, pre-employment interviews, company policy and past practices and (e) promotions and commendations." Hinson v. Cameron, 1987 OK 49, ¶ 14, 742 P.2d 549, 554-55. While these factors are weighed in making this inquiry, they need not each be proven in order for a court to find an implied contract. Id.

The two cases Plaintiff cites as support for the creation of an implied contract arise from substantially different circumstances than are present here. In both Kester v. City of Stilwell, 1997 OK CIV APP 1, ¶ 1, 933 P.2d 952, 953, and Parker v. Town of Chelsea, 263 F. App'x 740 (10th Cir. 2008), the plaintiffs based their claims for breach of implied contract on a city council's own policies and procedures and an employee handbook, respectively. While it is true that at-will employees may have an implied contractual right to certain employment procedures, Plaintiff has not sufficiently pled such a claim. Plaintiff asserts that the Tenth Circuit's opinion in this case supports his contention for asserting an implied contract claim created by the OMA. Specifically, Plaintiff cites the following portion of the Tenth Circuit's order:

> "Oklahoma case law indicates that public employees may indeed challenge decisions affecting their employment for lack of compliance with OMA procedures[.] . . [. ] The flaw in Dr. Trant's position is, rather, that the OMA imposed only procedural, not substantive[,] constraints on the Board."

(Pl.'s Br., Dkt. No. 92, at 17 (quoting Order, Dkt. No. 83, at 20).)  Plaintiff recognizes that the Tenth Circuit found that the OMA did not create an expectancy of continued employment, but argues that the Tenth Circuit implicitly recognized his right to assert a breach-of-contract claim pursuant to the OMA in their discussion of the procedural due process claim.  Plaintiff asserts that this open-ended question is the foundation of his contract claim.  But Plaintiff's theory ignores the context of the previously cited paragraph and does not account for his ability to challenge the Board's decision for lack of compliance with OMA procedures through his declaratory relief action, the same procedural posture of the two cases on which the Tenth Circuit relied in the cited passage.

It remains unclear to the Court how the OMA creates an implied contract between Plaintiff and the Board.  See 15 Okla. Stat. § 131 ("A contract is either express or implied."); id. § 133 ("An implied contract is one, the existence and terms of which are manifested by conduct.").  A handbook alone has been found to constitute an offer of a unilateral contract, Johnson v. Nasca, 1990 OK CIV APP 87, ¶ 6, 802 P.2d 1294, 1296, but a statutory mandate is no such offer.  See Russell v. Bd. of Cnty. Comm'rs, Carter Cnty., 1997 OK 80, ¶ 23, 952 P.2d 492, 501 (finding that "employee handbook may form the basis of an implied contract between an employer and its employees if four traditional contract requirements exist:  (1) competent parties, (2) consent, (3) a legal object and (4) consideration" (footnotes omitted)); Black v. Baker Oil Tools, Inc., 107 F.3d 1457, 1463 & n.4 (10th Cir. 1997).  Unlike an employee handbook or policy, the statutorily

required procedure outlined in the OMA is mandated by the legislature, not the employer.[6]

Selfridge v. Dollar Gen. Corp., Inc., 2000 OK CIV APP 86, ¶ 7, 9 P.3d 695, 698 ("There

is an objective component to the nature of an implied contract claim in the form of definite

and specific promises by the employer sufficient to substantively restrict the reasons for

termination.").  Additionally, the requisite consideration may not be based on "obligations

a party already is legally bound to perform."  Gragg v. James, 1969 OK 58, ¶ 39, 452 P.2d

579, 587, superseded by statute on other grounds, 12 Okla. Stat. § 2015, as recognized in

Prough v. Edinger, Inc., 1993 OK 130, 862 P.2d 71, 73.  Plaintiff has failed to sufficiently

state a claim for implied breach of contract and, therefore, Plaintiff's fifth claim must be

dismissed.

### 4. Burk Tort Claim

In Burk v. K-Mart Corp., 1989 OK 22, 770 P.2d 24, the Oklahoma Supreme Court

created an exception to its general rule of at-will employment by recognizing a cause of

action for wrongful discharge in violation of public policy.  Wilburn v. Mid-S. Health

Dev., Inc., 343 F.3d 1274, 1277 n.2 (10th Cir. 2003).  Generally, "employers are free to

discharge at-will employees in good or bad faith, with or without cause," but the Burk tort

allows an at-will employee to sue for wrongful discharge in violation of public policy.

Darrow v. Integris Health, Inc., 2008 OK 1, ¶ 3, 176 P.3d 1204, 1210.  To state a claim for

---

[6]  Apparently, the OMA has a personnel policy and procedure outlined in a handbook.
Hamrick v. State ex rel., Office of Chief Med. Examiner, 2011 OK 60, ¶ 4, 258 P.3d 509, 511.

wrongful discharge under the public policy exception to at-will employment, a plaintiff must allege

> (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal.

Vasek v. Bd. of Cnty. Comm'rs of Noble Cnty., 2008 OK 35, ¶ 14, 186 P.3d 928, 932.

Defendants move for dismissal of Plaintiff's asserted Burk tort claim by arguing that the OMA was enacted for the benefit of the "'citizenry's understanding of the governmental processes and governmental problems,'" and does not provide a "'specific, well-established, clear and compelling public policy'" sufficient for Plaintiff to assert the present claim. (Defs.' Br., Dkt. No. 88, at 11 (quoting Barker v. State Ins. Fund, 2001 OK 94, ¶ 24, 40 P.3d 463, and 25 Okla. Stat. § 302).) Additionally, Defendants argue that the Whistleblower Act adequately protects the public policy goal, which precludes Plaintiff from asserting a Burk claim. (Defs.' Br., Dkt. No. 88, at 19.) As support, Defendants cite the Oklahoma Supreme Court case Shephard v. CompSource Okla., 2009 OK 25, 209 P.3d 288, which found that the plaintiff-employee's Burk tort claim for wrongful termination was precluded by the Whistleblower Act. Id. ¶ 9, 292 ("[T]he Whistleblower Act does provide statutory remedies sufficient to protect the Oklahoma public policy goal of protecting employees who report the wrongful governmental activities."). But here, unlike

in Shephard, Plaintiff asserts Article 2 § 22 as the public-policy basis for his Burk claim, not the Whistleblower Act.  (Am. Compl., Dkt. No. 38, ¶ 112.)

In Shephard, the Oklahoma Supreme Court found that the relief provided in the Whistleblower Act—reinstatement, back pay and other benefits, and expungement of adverse action—adequately protected the public policy, noting the absence of a private right of action in the statute.  Ultimately, the court found that the Whistleblower Act was a sufficient statutory remedy to protect the public policy goal, which precluded the plaintiff from resorting to her Burk tort cause of action.  Id.  Cf. Collier v. Insignia Fin. Group, 1999 OK 49, ¶ 14, 981 P.2d 321, 326 (finding that the Oklahoma Anti-Discrimination Act did not provide the exclusive remedial scheme for wrongful discharges based on sexual discrimination practices, but rather "cumulative of the common-law Burk remedy," which avoided the "pitfall of according asymmetrical remedies to members of a single class of employment-discrimination victims."); Foster v. Thompson, No. 05-CV-305-TCK-FHM, 2008 WL 4682264, at *5-6 (N.D. Okla. Oct. 21, 2008) (finding in a pre-Shephard case that the prior version of the Whistleblower Act did not sufficiently protect the Oklahoma public policy goal); see Dixon v. Okla. Bd. of Veterinary Med. Exam'rs, No. CIV-06-1003-M, 2009 WL 1473973, at *2-3 (W. D. Okla. May 26, 2009) (granting summary judgment to defendant on the plaintiff's Burk tort claim premised upon the Whistleblower Act).

Because Plaintiff asserts Article 2 § 22 as the public-policy basis for his Burk claim, not the Whistleblower Act—the asserted public-policy basis in Shephard—he is not

14

foreclosed from asserting a <u>Burk</u> tort claim.  (Am. Compl., Dkt. No. 38, ¶ 112.)  <u>See</u>

<u>Newby v. State of Okla. ex rel. Okla. Dep't of Pub. Safety</u>, No. CIV-10-1153-C, 2011 WL

6883735, at *1 (W.D. Okla. Dec. 28, 2011) (declining to extend the <u>Shephard</u> holding to

plaintiff's <u>Burk</u> tort claim based on Art. 2 § 22 of the Oklahoma Constitution).

Accordingly, dismissal of Plaintiff's seventeenth claim is unwarranted.

## 5.  Exhaustion of Administrative Remedies

Defendants next contend that Plaintiff's claims must be dismissed for failure to

properly exhaust available administrative remedies.[7]  (Defs.' Br., Dkt. No. 88, at 15.)

Specifically, Defendants claim that Plaintiff had a statutory remedy through the

Whistleblower Act to appeal the Board's termination of Plaintiff to the Oklahoma Merit

Protection Commission ("MPC"), which Plaintiff did not do.  As a result, Defendants

argue, Plaintiff's exclusive remedy for his wrongful termination was the procedure outlined

in the Whistleblower Act, and Plaintiff's remaining claims should therefore be dismissed.

Plaintiff asserts that the Board terminated him as CME because of his comments regarding

the grand jury indictment, in violation of his constitutional rights, in addition to violating

---

[7] Plaintiff argues that dismissal of these claims is unwarranted due to the state court's previous refusal to dismiss.  (Pl.'s Br., Dkt. No. 92, at 19).  <u>See</u> <u>Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers</u>, 415 U.S. 423, 437 (1974) ("[O]nce a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal.").  While federal courts will take up the case where the state court left off, an amended complaint supersedes a prior complaint "'and renders it of no legal effect.'"  <u>Davis v. TXO Prod. Corp.</u>, 929 F.2d 1515, 1517 (10th Cir. 1991) (<u>quoting</u> <u>Int'l Controls Corp. v. Vesco</u>, 556 F.2d 665, 668 (2d Cir. 1977)); <u>Miller v. Glanz</u>, 948 F.2d 1562, 1565 (10th Cir. 1991) (amended complaint supersedes original complaint).

the OMA procedures during his termination.[8]   Plaintiff argues that he seeks damages

arising from Defendants' alleged constitutional violations, which has been "recognized as

a basis for concluding that exhaustion is not required." (Pl.'s Br., Dkt. No. 92, at 23 (citing

Walker v. Group Health Servs., Inc., 2001 OK 2, ¶ 39, 37 P.3d 749, 762).)

When exhaustion is a legislative command, the requirement is jurisdictional, and

must be satisfied. Apache Corp. v. State of Okla. ex rel. Okla. Tax Comm'n, 2004 OK 48,

¶¶ 10-11, 98 P.3d 1061, 1064 (finding that the plaintiff's claim for a tax refund was barred

by the plaintiff's failure to exhaust administrative remedies). Exhaustion of administrative

procedures is a prudential doctrine when not statutorily required. Waste Connections, Inc.

v. Okla. Dep't of Envtl. Quality, 2002 OK 94, ¶ 8, 61 P.3d 219, 223.   Additionally,

"'[d]eclaratory relief may not be invoked as a substitute for an appeal by one who has been

aggrieved by an adverse agency ruling,' and issues that lie within an agency's original

cognizance may be considered by the district court only when it is entertaining an

administrative appeal." State of Okla. ex rel. Okla. Dep't of Mines v. Jackson, 1997 OK

149, ¶ 13, 950 P.2d 306, 310 (quoting Ricks Exploration v. Okla. Water Res. Bd., 1984

OK 73, 695 P.2d 498, 502). Any prerequisite to suit in court is limited to the adequacy of

_____

[8] Defendants argue that Plaintiff has not sufficiently pled an OMA violation because
Plaintiff admits that the Board voted on his termination in open session and that each vote was
tallied. (Defs.' Br., Dkt. No. 88, at 21-22.) While Plaintiff admits that the vote was conducted
after returning from executive session, Plaintiff still disputes the notice and agenda requirements
regarding this meeting, and at this stage in the proceeding, the Court must construe all facts in
Plaintiff's favor. Defendants' argument that Plaintiff lacks standing to assert this claim, because
no violation of the OMA procedures occurred, is also unavailing. (Id. at 23.)

the administrative relief.  See Lone Star Helicopters, Inc. v. Oklahoma, 1990 OK 111, ¶ 7,

800 P.2d 235, (finding that the plaintiff's breach of contract claim was not barred by failure

to exhaust administrative remedies because "the administrative review process [did] not

provide an adequate avenue of relief . . . ."); see also Mattoon v. City of Norman, 1980 OK

137, ¶ 19, 617 P.2d 1347, 1350 (finding that administrative remedy could not effectively

afford the plaintiff compensation).

While exhaustion of available administrative remedies is normally a prerequisite to

suit, "[a] district-court action is not abatable *if the uninvoked administrative remedy was

unavailable, ineffective or would have been futile to pursue*."  Tinker Inv. & Mortg. Corp.

v. City of Midwest City, 1994 OK 41, ¶ 12, 873 P.2d 1029, 1038.  Additionally, the

Oklahoma Administrative Procedures Act prescribes the procedure for judicial review of

final agency orders, including the time limits within which a party may appeal an adverse

decision, which is a jurisdictional prerequisite.  Conoco, Inc. v. State Dep't of Health of

State of Okla., 1982 OK 94, ¶¶ 11-12, 651 P.2d 125, 128.  While review of final agency

orders under § 318 is the exclusive judicial review, "'nothing in [that]

section . . . prevent[s] resort to other means of review, redress, relief or trial de novo,

available because of *constitutional provisions*' . . . [nor does] this section . . . limit other

means of judicial review which are 'provided by *law*.'"  Id. ¶ 12, 651 P.2d at 128-29.

Here, Plaintiff did not seek review by the MPC.  Even if Plaintiff had sought such

administrative relief, the Whistleblower Act grants only limited remedial authority to the

17

MPC:  reinstatement, back pay and other benefits, and expungement of any adverse action. Shephard, 2009 OK 25, ¶ 6, 209 P.3d at 292.  In Zachary v. State ex rel. Department of Corrections, 2001 OK CIV APP 120, ¶¶ 6-7, 34 P.3d 1171, the court recognized that if an employee is "simply trying to get his job back" then exhaustion would be necessary.  In that case, because the employee asserted tort claims for money damages, the court found the Merit Protection Commission could not have awarded the sought-after relief and that exhaustion was unnecessary.  Plaintiff argues the same logic applies to his claims:  He seeks money damages pursuant to his GTCA and constitutional claims and, therefore, was not required to exhaust his administrative remedies.  The MPC does not have authority to determine and award damages for constitutional violations and tort claims.  See Waste Connections, 2002 OK 94, ¶ 9, 61 P.3d at 223 ("[A]dministrative agencies lack the power to pass on constitutional questions.").

Therefore, administrative exhaustion is not required for Plaintiff to assert these claims.  Jackson, 1997 OK 149, ¶ 12 & n.6, 950 P.2d at 310 & n.6 (finding exhaustion doctrine inapplicable because actions were not cognizable to the state agency and stating that "when a state agency has no authority to resolve a particular dispute, exhaustion of administrative remedies raises no bar to a district court action.").  Only Plaintiff's fourth claim, which explicitly seeks reinstatement of his position, may be foreclosed by failure

18

to exhaust.[9]  See R.R. Tway, Inc. v. Okla. Tax Comm'n, 1995 OK 129, ¶ 25, 910 P.2d 972

("Generally, when a statute creates both a right and a remedy for its enforcement the

statutory remedy is exclusive.").  Because the scope of review by the MPC is statutorily

limited and does not encompass Plaintiff's constitutional and tort claims for money

damages, dismissal of Plaintiff's remaining claims for failure to exhaust administrative

remedies is not required.

### B.  Individual Defendants' Motion to Dismiss

In addition to seeking dismissal in their official capacities, Defendants named in

their individual capacities also move to dismiss Plaintiff's state law free speech claim for

failure to state a claim on which relief may be granted.  To the extent that Plaintiff's claims

survived the State's motion to dismiss, such claims will be considered in light of the

individual Defendants' arguments for dismissal.

Individual Defendants argue that Plaintiff's claim for violation of his free speech

rights under the Oklahoma Constitution must be dismissed because that constitutional right

---

[9]  Another basis for dismissal of Plaintiff's fourth claim is raised by Defendants:
application for writ of mandamus directing the Board to reinstatement him as CME is
inappropriate.  See Martin v. Harrah Ind. Sch. Dist., 1975 OK 154, 543 P.2d 1370.  Mandamus is
an extraordinary legal remedy, and "[b]efore a writ may issue there must be found (1) a clear
legal right in the petitioner, (2) the respondent's refusal to perform a plain non-discretionary
legal duty and (3) the writ's appropriateness as a legal remedy and the inadequacy of other
relief." Bd. of Cnty. Comm'rs of Muskogee Cnty. v. City of Muskogee, 1991 OK 115, ¶ 9, 820
P.2d 797, 803, overruled on other grounds, Clay v. Indep. Sch. Dist. No. 1 of Tulsa Cnty., 1997
OK 13, ¶ 29, 935 P.2d 294, 306-07; 12 Okla. Stat. Ann. § 1452.  Because there is doubt as to
whether Plaintiff has a clear legal right to a writ of mandamus to compel his reinstatement, this
claim should be dismissed.  See Wadley v. City of Purcell, 1979 OK CIV APP 50, ¶¶ 10-11, 601
P.2d 751, 754.

is not self executing and can only be asserted through a <u>Burk</u> tort claim.  In addition to Plaintiff's <u>Burk</u> tort claim alleging that he was terminated in violation of Oklahoma public policy, namely, Art. 2 § 22 of the Oklahoma Constitution, Plaintiff also seeks monetary damages against Defendants individually for violation of Plaintiff's free speech pursuant to the Oklahoma Constitution.  (Am. Compl., Dkt. No. 38, at 39-41.)  Plaintiff does not assert his last three GTCA claims against the individual Defendants, rather this claim is only asserted against the State of Oklahoma.  However, Plaintiff's constitutional claims asserting a right to damages against individual Defendants would essentially be a constitutional tort pursuant to the GTCA, which would require dismissal of the individual defendants only if they were acting in the scope of their employment.

The GTCA defines "tort" as "a legal wrong, independent of contract, involving violation of a duty imposed by general law or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment."  51 Okla Stat. § 152 (2001).  <u>Underwood v. Bd. of Cnty. Comm'rs of Cnty. of Jefferson</u>, 611 F. Supp. 2d 1223, 1233-34 (W.D. Okla. 2009) (granting summary judgment for defendant on plaintiff's Oklahoma constitutional free speech claim after finding that plaintiff failed to distinguish remedies available under § 1983 free speech claim); <u>see</u> <u>Portley-El v. Bivins</u>, No. CIV-08-160-D, 2009 WL 806793 (W.D. Okla. Mar. 24, 2009) (finding that plaintiff's asserted state law claims for violation of state constitution were "constitutional torts"

because "'[a] constitutional tort is any action for damages for violation of a constitutional right against a government or individual defendants.'" (quoting Binette v. Sabo, 710 A.2d 688, 693 n.12 (Conn. 1998))).

Whether individual defendants would be immune from suit as state employees pursuant to the GTCA depends upon whether they were acting within the scope of employment, which is a factual inquiry.  74 Okla. Stat. § 840-1.3(1) (the OCME is an "agency" as an office of the State of Oklahoma); 51 Okla. Stat. § 152.1(A); § 152(7)(a)(1), (12) (defining employee as including "all elected or appointed officers, members of governing bodies and other persons designated to act for an agency or political subdivision" and scope of employment as "performance by an employee acting in good faith within the duties of the employee's office or employment").  See DeCorte v. Robinson, 1998 OK 87, ¶ 11, 969 P.2d 358, 361; Bryson v. Okla. Cnty. ex rel. Okla. Cnty. Det. Cntr., 2011 OK CIV APP 98, ¶ 11, 261 P.3d 627, 632.  In his Amended Complaint, Plaintiff has alleged that the individual defendants acted maliciously and in bad faith when they terminated him as CME, which, at this stage in the proceeding, must be viewed in Plaintiff's favor.  Accordingly, dismissal of Plaintiff's ninth claim is not warranted at this stage of the proceeding.

## C.  Defendant Balzer's Motion to Dismiss

Finally, Defendant Balzer moves to dismiss Plaintiff's claims against her in her individual capacity, which now includes Plaintiff's seventh, ninth, and fourteenth claims,

on the basis of absolute or qualified immunity.  Defendant Balzer argues that all actions complained of by Plaintiff in his Amended Complaint were made in her capacity as an assistant attorney general providing legal advice to the Board.  See 74 Okla. Stat. § 18. The extent of Defendant Balzer's connection with the complained-of conduct includes providing advice to the Board to enter executive session and legal advice regarding Plaintiff's administrative leave and subsequent termination.  Plaintiff argues that the Tenth Circuit's remand of a portion of his § 1983 first amendment claim forecloses present consideration of Defendant Balzer's qualified immunity arguments.

Defendant Balzer, as "'[t]he official seeking absolute immunity[,] bears the burden of showing that such immunity is justified for the function in question.'"  Howards v. McLaughlin, 634 F.3d 1131, 1140 n.6 (10th Cir. 2011), cert. granted sub nom, Reichle v. Howards, ___ U.S. ___, 132 S. Ct. 815 (2011) (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 268-69 (1993).  Defendant Balzer asserts both legislative immunity and prosecutorial immunity.  Legislators are absolutely immune from suit for their legislative activities and conduct that entails legislative functions, but not "administrative actions which do not concern the enactment or promulgation of public policy."  Borde v. Bd. of Cnty. Comm'rs of Luna Cnty., N.M., 423 F. App'x 798, 801 (10th Cir. 2011).  Defendant Balzer argues that because the Board's function as overseer of the CME is pursuant to a legislative grant of authority, the Board's action in terminating the CME, and her advisement of the same, are legislative activities that entitle her to absolute immunity.

Even if this immunity extended to the Board's action, it would not apply to conduct that is simply an administrative employment decision.  Bogan v. Scott-Harris, 523 U.S. 44, 55 (1998) (finding that legislative immunity shields from suit not only legislators, but also officials in the executive and judicial branches when they are acting "in a legislative capacity"); see Borde, 423 F. App'x at 801 ("Legislative immunity also extends to non-legislative officials so long as their conduct involves the performance of legislative functions[,]" but not to "administrative actions which do not concern the enactment or promulgation of public policy."); Kamplain v. Curry Cnty. Bd. of Comm'rs, 159 F.3d 1248, 1252 (10th Cir. 1998) (citing a Pennsylvania case for the proposition that "a municipality's employment decisions are 'essentially administrative in nature.'" (quoting Detz v. Hoover, 539 F. Supp. 532, 534 (E.D. Pa. 1982)).  See Canary v. Osborn, 211 F.3d 324, 329 (6th Cir. 2000) (declining to extend immunity to school board's employment renewal decisions).  While the Board, a state agency, exercised its discretion to terminate Plaintiff, as CME, pursuant to its legislative grant of authority, this decision did not affect the budgetary concerns of the public or implement public policy.  Cf. Bogan, 523 U.S. at 55-56 (finding legislative action occurred because "[t]he ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents.").  Accordingly, Defendant Balzer has not met her burden of establishing that this immunity is presently justified.

Neither is Defendant Balzer entitled to absolute immunity under the argument that she was performing functions analogous to a prosecutor.  Perez v. Ellington, 421 F.3d 1128, 1133 (10th Cir. 2005) ("State officials are absolutely immune from suit if they 'perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings.'" (quoting Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1490 (10th Cir. 1991))).  To determine whether Defendant Balzer is entitled to absolute immunity for her actions taken as an attorney for a state agency, the Court applies a "'functional approach.'"  Buckley, 509 U.S. at 269.  Pursuant to this approach, the Court examines "'the nature of the function performed'" rather than "'the identity of the actor who performed it.'"  Id. (quoting Forrester v. White, 484 U.S. 291, 229 (1988)).  "The more distant a function is from the judicial process, the less likely absolute immunity will attach."  Snell v. Tunnell, 920 F.2d 673, 687 (10th Cir. 1990).  Nor does immunity "extend to actions 'that are primarily investigative or administrative in nature.'"  Scott v. Hern, 216 F.3d 897, 908 (10th Cir. 2000) (quoting Pfeiffer v. Hartford Ins. Co., 929 F.2d 1484, 1490 (10th Cir. 1991)).  The cases Defendant Balzer cites as support for application of this immunity involve attorneys litigating the state's interests, not providing general legal counsel regarding employment decisions. Defendant Balzer has not satisfied her burden of establishing that this immunity is presently justified.

Finally, because the Tenth Circuit found that Defendants were not entitled to qualified immunity regarding a portion of Plaintiff's First Amendment claim and because

Oklahoma's free speech rights are broader than the federal equivalent, Defendant Balzer's Motion for Dismissal of Plaintiff's federal and state constitutional claims on the basis of qualified immunity is not presently warranted:  It was clearly established that the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern and that a public employer is prohibited from retaliating against an employee for exercising that constitutionally protected right of free speech.  Garcetti v. Ceballos, 547 U.S. 410, 417 (2006) ("[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."); Dill v. City of Edmond, Okla., 155 F.3d 1193, 1201 (10th Cir. 1998) (a public employer "cannot retaliate against an employee for exercising his constitutionally protected right of free speech."); see Brock v. Thompson, 1997 OK 127, ¶ 16 n.33, 948 P.2d 279, 288 n.33 (finding that the state constitutional protections regarding freedom of speech, under Okla. Const. art. 2, § 22, are broader than the federal protections).

Plaintiff's only remaining federal claim under 42 U.S.C. § 1983 asserts a violation of Plaintiff's First Amendment right against Defendants in their individual capacities regarding statements made by Plaintiff or his attorney regarding retention of counsel and reporting to the FBI wrongdoing that tainted the grand jury investigation.  The Tenth Circuit found that these statements "triggered First Amendment protection and that defendants should have known it did."  Trant v. Oklahoma, 426 F. App'x 653, 660-61 (10th Cir. 2011).

Defendant Balzer also seeks dismissal of this claim for failure to allege facts specific to her, which is essential when alleging a § 1983 claim.  Under the Amended Complaint, however, Plaintiff alleges that Defendant Balzer fabricated a claim of insubordination as a pretext for his termination in retaliation for his statements regarding the FBI and the grand jury investigation.  (Am. Compl., Dkt. No. 38, at 26.)  Pursuant to this alleged action, Plaintiff claims Defendant Balzer personally participated in the deprivation of his rights, which vitiates Defendant's argument that Plaintiff is seeking to hold Defendant Balzer liable solely for the Board's actions.  (Def.'s Br., Dkt. No. 90, at 15); Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997) (stating that personal liability "under § 1983 must be based on personal involvement in the alleged constitutional violation."); see also Anderson v. Canaday, 1913 OK 209, ¶ 8, 131 P. 697, 699-700 (finding that "[a]n attorney is not ordinarily liable for the acts of his client.  The fact that through ignorance he gives his client bad advice, on which he acts to the hurt of another, will not make the attorney liable to that other.  But where the attorney is actuated by malicious motives or shares the illegal motives of his client he becomes responsible.").  Accordingly, Defendant's argument is not persuasive, and Plaintiff's claim survives the present Motion for Dismissal.

## CONCLUSION

Accordingly, State Defendants' Motion to Dismiss (Dkt. No. 88) is GRANTED IN PART and DENIED IN PART:  Plaintiff's first claim is DISMISSED WITHOUT PREJUDICE; Plaintiff's fourth, fifth, sixth, and eighth claims are DISMISSED WITH

PREJUDICE.   State Defendants' Motion is DENIED regarding Plaintiff's remaining claims.   Individual Defendants' Motion to Dismiss (Dkt. No. 89) is DENIED.   Finally, Defendant Balzer's Motion to Dismiss is DENIED (Dkt. No. 90).   In summary, Plaintiff's first, third, fourth, fifth, sixth, eighth, tenth, eleventh, twelfth, thirteenth, fifteenth, sixteenth, and nineteenth claims are DISMISSED.   At this stage of the proceeding, the following claims survive:   Plaintiff's second claim against Defendants in their official capacities; Plaintiff's seventh, ninth, and fourteenth claims against Defendants individually; and Plaintiff's seventeenth and eighteenth claims against the State of Oklahoma.

IT IS SO ORDERED this 19th day of March, 2012.

ROBIN J. CAUTHRON
United States District Judge